COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KEVIN LAMONT MCCUIN, | § | No. 08-10-00108-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC# 1139278D) |
| | § | |

**O P I N I O N**

Kevin McCuin was convicted of capital murder and sentenced to life in prison. He appeals his conviction, and raises three issues for this Court's review. In Issue One, he contends the evidence is legally insufficient to support the conviction. In Issues Two and Three, he contends the trial court abused its discretion by overruling two evidentiary objections. Finding no reversible error, we affirm.

**BACKGROUND**

In 2008, Rodney Ryan went to work for Sega Towing Company, in Fort Worth, Texas as a mechanic. Within seven months he was a manager in the shop. During that time he purchased a 1999 Range Rover SUV from his employer. Mr. Ryan took great pride in the vehicle, constantly washing and polishing the vehicle, and performing the maintenance himself. When Mr. Ryan left work on the evening of November 22, 2008, his boss gave him $500 cash, which Mr. Ryan was supposed to deliver to another employee. Mr. Ryan carried the money, along with the rest of his daily necessities, in a red backpack. Mr. Ryan's sister, teased her brother that the

backpack was like his "purse." The backpack generally contained Mr. Ryan's wallet, photos of his three children, his cell phone, and datebook, and other miscellaneous items, like bills or work related items. Mr. Ryan carried the backpack everywhere.

On that same evening, Department of Homeland Security Officer Stephen Mullinax drove past the All American Car Wash on Berry Street near Sega Towing's shop, where he noticed a man lying on the ground near a vehicle in one of the wash bays. When he stopped to check on the man, he found Rodney Ryan laying on the ground near his Range Rover in a pool of blood. Officer Mullinax immediately called 9-1-1, and began CPR. The officer noted that the man's SUV, a Range Rover, was still running when he approached. The wash bay and the vehicle were wet, as though the man had been shot while he was washing the vehicle. The victim, identified as Mr. Rodney Ryan, died from a gunshot to the chest. Just prior to his death, he also suffered several abrasions to his face, right shoulder, right elbow, right knee, and left hand. The Tarrant County Medical Examiner ruled Mr. Ryan's death a homicide, and City of Fort Worth Detective Sarah Waters handled the investigation.

Without any eyewitnesses to the shooting, Detective Waters proceeded to contact the businesses surrounding the car wash to locate security footage of the area. With the help of Detective Troy Lawrence of the police department's digital forensic lab, Detective Waters recovered video footage from several security cameras at a liquor store. The liquor store, "Zoom-In Liquor," is located adjacent to the car wash and had several outdoor security cameras which recorded some of the events immediately prior to Officer Mullinax's 9-1-1- call.

The detectives copied the footage and released the images to the media, in an attempt to identify the individuals seen on the tape. The recording was turned over to Forensic Video Analysist Mark Porter for further analysis and enhancement. The video showed a dark colored

Cadillac sedan pull through the parking lot, and then return and stop facing toward the car wash. Two individuals can be seen in the car. The driver, wearing a multi-colored baseball cap, exited the vehicle, walked toward the car wash, and out of the view of the cameras. The individual in the front passenger's seat then got out of the car, walked around the vehicle, and got into the driver's seat. Moments later, the individual wearing the baseball cap, who had walked in the direction of the car wash reappears on the tape, running toward the Cadillac. He jumped into the car, and the two men drove away. Minutes later, Officer Mullinax found Mr. Ryan on the ground alongside his vehicle.

One of the people who saw the video was Mr. Mario Penix. He recognized the liquor store and the car wash depicted, and identified the individuals on the video as Appellant, and his identical twin brother Keith McCuin. He also recognized the Cadillac sedan as Keith McCuin's car, and recognized Kevin because of the jacket he was wearing when he got out of the Cadillac to move into the driver's seat. Mr. Penix told the police that he recognized that particular jacket, because he had seen Kevin wearing it and remembered the distinctive sports team logo on it.

Based on Mr. Penix's identifications, Detective Waters arrested Kevin McCuin and his brother at their home in Fort Worth. During a search of the premises, officers located a baseball hat which Detective Waters described as, "strikingly similar" to the hat worn by the individual Mr. Penix had identified in the video as Keith McCuin. Officers also confirmed that a Cadillac, which was identical to the vehicle in the liquor store video, was registered to the McCuins' mother.

Appellant was indicted for capital murder for his participation in the offense. He was convicted by a jury and sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

**ANALYSIS**

In Issue One, Appellant contends that the evidence is legally insufficient to support his conviction. When conducting a legal sufficiency review, the reviewing court views all the evidence in the light most favorable to the verdict, to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[1] *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). We must defer to the fact finder's resolution of conflicts in the evidence, as well as its evaluation of the weight and credibility attributed to witnesses. *Hooper v. State*, 214 S.W.3d 9, 16-7 (Tex.Crim.App. 2007). Sufficiency is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct charge includes an accurate statement of the law, is authorized by the indictment, and adequately describes the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

There are several methods by which someone may commit a capital murder offense. *See* TEX.PENAL CODE ANN. § 19.03 (West 2011). In this case, Appellant was convicted of taking part in the murder of Mr. Ryan during the commission of another felony offense, robbery. TEX.PENAL CODE ANN. § 19.03(a)(7)(West Supp. 2011). As such, the essential elements of the offense included: (1) intentionally or knowingly; (2) causing; (3) the death of an individual; (4) during the commission of a robbery. *See* TEX.PENAL CODE ANN. §§ 19.03(a), 29.02(a)(West 2011). A person commits the offense of robbery if, in the course of committing a theft and with the intent to obtain or control of the property he: (1) intentionally or knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or

---

[1] This is the only standard applicable to determine whether the evidence is sufficient to support a criminal conviction. *See Adames v. State*, 353 S.W.3d 854, 859 (Tex.Crim.App. 2011). To the extent Appellant has raised an argument under the standard of review for factual sufficiency, that argument presents nothing for our review. *See id.*

4

places another in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.02(a)(West 2011). A person commits a theft by unlawfully appropriating property with the intent to deprive the owner of that property. TEX.PENAL CODE ANN. § 31.03(a)(West Supp. 2011).

In addition to the statutory elements, the jury in this case was provided the following instruction, without objection:

> Now if you find from the evidence beyond a reasonable doubt, in Tarrant County, Texas, on or about the 22nd day of November 2008, [Appellant] acting with the intent to promote or assist the commission of the offense of capital murder, solicited, encouraged, directed, aided, or attempted to aid Keith Demont McCuin to commit the offense of capital murder, or that Keith Demont McCuin, in the attempt to carry out a conspiracy to commit robbery, committed capital murder by intentionally causing the death of Rodney Ryan by shooting him with a firearm, though Kevin Lamont McCuin had no intent to commit capital murder if the capital murder was committed in furtherance of the unlawful purpose of Kevin Lamont McCuin and Keith Demont McCuin and should have been anticipated by Kevin Lamont McCuin as a result of the carrying out of the conspiracy, then you will find the defendant guilty of the offense of capital murder.

Mr. Mario Penix, a long-time friend of Appellant and his brother, testified that he recognized the brothers as the individuals in the Cadillac visible on the video. Mr. Penix testified that he recognized the car depicted in the video as Keith McCuin's car. He explained that when the car pulled up to the liquor store, Keith was driving. When the vehicle stopped, Mr. Penix explained that he saw Keith get out of the car first. According to Mr. Penix, the individual who exited the vehicle from the passenger's side and walked around the car to the driver's position was Appellant.

Detective Sarah Jane Waters provided testimony regarding the video footage. She stated that after he left the vehicle, the individual who had originally been driving the Cadillac walked away from the vehicle, toward the back of the car wash and out of camera view. The detective explained the individual's path led directly toward a large gap in the fence separating the back of

5

the liquor store's property from the rear of the car wash. The detective testified that the condition of the fence would have provided easy access between the rear of the liquor store and the rear of the car wash. Returning to the video footage, Detective Waters noted that when the individual re-appears in the camera frame, he can be seen running from the direction of the car wash, and jumping into to the back of the Cadillac before the sedan drove away from the scene.

Mr. Ryan's sister testified that her brother's red backpack went missing after the shooting, and was never recovered. Similarly, according to Mr. Ryan's employer, the cash Mr. Ryan was carrying when he left work on November 22, 2008, disappeared.

The State's theory of the case, as evidenced by the section of the charge quoted above, and from the prosecution's presentation of the evidence, was that the McCuin brothers acted together in the planning and execution of a would-be robbery. Keith McCuin was consistently identified as the individual who approached the victim, and Appellant as the getaway driver. Appellant's legal sufficiency argument makes little or no reference to the statutory elements of the offense, but he seems to argue that the evidence is legally insufficient because his alleged role in the offense was limited to driving the getaway car. What Appellant's argument fails to address is that the jury was instructed that Appellant could be convicted of the charged offense, regardless of the nature of his physical involvement, if the jury found that he solicited, encouraged, directed, aided, or attempted to aid Keith in the commission of the robbery which led to Mr. Ryan's death.

The central question in any legal sufficiency review is whether there was a rational basis for the jury's conclusion that the State proved its case beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 895. While the review is founded in the concept of the "hypothetically correct jury charge," that charge does not exist in a vacuum. As noted above, the concept itself

6

necessarily includes statements of applicable principles of law, as well as a description of the particular offense for which the defendant was tried. *See Malik*, 953 S.W.2d at 240. The jury receives this information via the court's charge, and is presumed to have read and followed its instructions. Here, in addition to the statutory elements necessary for a capital murder conviction, the jury was instructed that it could convict Appellant if it determined that he committed the offense by soliciting, encouraging, directing, aiding, or attempting to aid another in the actual commission of the offense. We cannot consider the rationality of the jury's decision without taking these additional instructions into account. Having considered all of the evidence, as well as any reasonable inferences therefrom, it is clear that a rational juror could have found Appellant guilty of the offense beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App. 2006). Issue One is overruled.

In Issues Two and Three, Appellant challenges the trial court's decision to admit two pieces of evidence over Appellant's Rule 403 objection. Appellant objected to the admission of State's Exhibit 19, the video recording from the liquor store, and State's Exhibit 22 a photograph of Appellant's brother wearing a multi-colored hat. Both objections were overruled by the trial court and the evidence was admitted.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009). A trial court abuses its discretion when its decision lies outside the "zone of reasonable disagreement." *Id.* at 343-44.

As a general matter, relevant evidence is admissible. *See* TEX.R.EVID. 401. Evidence may be excluded despite its relevance, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.EVID. 403. An objection under Rule 403 requires the trial court to weigh the probative value of the evidence to determine whether it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997). A Rule 403 balancing test includes consideration of several factors: (1) the inherent probative force of the proffered item of evidence; (2) the proponent's need for the evidence; (3) the evidence's tendency lead to a decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues in the case; (5) the tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that the presentation of the evidence will consume an inordinate amount of time, or be cumulative of evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42, n.8 (Tex.Crim.App. 2006).

    1. Probative Value and Need

With regard to both the video and still images, the trial court could reasonably have concluded that the evidence was probative to show Appellant's presence at the scene, and the degree of cooperation between Appellant and his brother before, during, and after the shooting. In addition, because this is a case where the camera was the only "eye witness" available, the trial court could have concluded that the images recovered were necessary for the prosecution.

    2. Unfair Prejudice

There is no indication, and Appellant does not argue, that the images had any tendency to incite the jury into deciding the case on an improper basis. While the exhibits were certainly prejudicial to Appellant, the trial court could reasonably have concluded that the prejudice was not so unfair as to warrant exclusion.

8

3. Confusion of the Issues

As was discussed in Issue One, the evidence presented by the State was consistent with the theory that Appellant's brother was the individual who actually shot Mr. Ryan, leaving Appellant in the vehicle to provide a quick escape. There is no indication in the record that the challenged exhibits created or added to any confusion regarding the events leading up to and following the shooting. Accordingly, the trial court could reasonably have concluded that the evidence had very little tendency to confuse, and that the evidence assisted the jury in understanding the brothers' orchestrated, but separate roles in the enterprise.

4. Misleading the Jury

Similar to our analysis under factor three, due to the nature and content of the evidence at issue, the trial court could reasonably have concluded that there was little danger the images would mislead the jury.

5. Undue Delay and Needless Presentation of Cumulative Evidence

As is evident from our legal sufficiency review above, the State spent a great deal of its time during the guilt-innocence phase of trial presenting different aspects and portions of the video recording through multiple witnesses. However, in light of the probative value of the recording, the trial court could reasonably have concluded that there was no undue delay implicated by the presentation. Similarly, with regard to the still images, given the highly probative nature of the images, the trial court could reasonably have concluded that to the extent the photographs were cumulative, their presentation was necessary.

In sum, having considered the Rule 403 factors as they relate to each challenged piece of evidence, we conclude that the trial court could reasonably have concluded that the probative value of the evidence was not substantially outweighed by the potential for undue prejudice.

9

Therefore, the trial court's decision to admit the evidence over Appellant's objection was not an abuse of discretion in either instance.[2]  Issues Two and Three are overruled.

## CONCLUSION

Having overruled all three of Appellant's issues, we affirm the trial court's judgment.


February 22, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

---

[2] Having concluded that the rulings were not erroneous, there is no need to conduct a harm analysis.  *See* TEX.R.APP.P. 44.2(b).